IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| G.P., a minor; K.P., on her own behalf and as mother and next of friend to G.P., | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 17-cv-1891 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| CHICAGO BOARD OF EDUCATION, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

After the Court granted summary judgment in favor of the sole remaining Defendant, the Chicago Board of Education [100], Plaintiffs filed a motion to reconsider pursuant to Federal Rule of Civil Procedure 60(b) [102], arguing that the Court's ruling conflicts with Seventh Circuit precedent on the Americans with Disabilities Act ("ADA"). For the reasons explained below, Plaintiffs' motion to reconsider [102] is granted in part (in that the Court acknowledges and corrects an error in its prior opinion), but otherwise denied as that error does not alter the proper disposition of this case or the final judgment [101] previously entered on the docket.

**I.    Background**

For a full factual background, the Court refers the reader to its prior memorandum opinion and order. [100, at 6–10]. In brief, while attending Drummond Montessori Magnet School ("Drummond"), G.P. developed disabilities requiring her to use a wheelchair at all times. Drummond is located in a building that is not wheelchair accessible on the second and third floors. As a result, Defendant offered to (1) transfer G.P. to one of two other Montessori schools and (2) provide transportation to the new school. Plaintiffs did not accept the transfer and instead requested that Defendant install an elevator or lift in the building, relocate G.P.'s classroom to

accessible floors, or build a ramp to the basement. When Defendant did not grant these requests, Plaintiffs filed this suit, alleging that Defendant violated § 504 of the Rehabilitation Act ("RHA") and Title II of the ADA. [62, at 14–18].

The parties filed cross motions for summary judgment, and the Court granted summary judgment in favor of the Defendant. [100]. Relevant here, the Court first found that because Defendant offered to transfer G.P. to other Montessori schools, Defendant did not deny her program access because "the Montessori program, taken as a whole, is accessible." [100, at 23]. The Court explained that Plaintiffs' arguments conflated program access with facility access and that their "contention that any disparity in the proportions of persons with disabilities necessarily violates the regulation would render" ADA regulations permitting "alternative accessible sites * * * a nullity." [*Id.*, at 21]. Next, the Court concluded that because the transfer offer provided G.P. with program access, the Defendant had no legal obligation to further modify its policies or facilities. In doing so, the Court acknowledged that "the failure to reasonably modify policies and practices is generally actionable under Title II," but explained that such modifications are required when they "*are necessary to avoid discrimination* on the basis of disability." [*Id.*, at 26] (quoting 28 C.F.R. § 35.130(b)(7)(i)). The Court reasoned that with the transfer offer in place there was no discrimination and further modifications therefore were unnecessary. Accordingly, the Court granted summary judgment for Defendant.

## II. Legal Standard

Parties can request a district court to correct a judgment through Rule 60(b) or Rule 59(e). See *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749–50 (7th Cir. 1995). "It is well-established that Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances," and that the rule "permits a party to seek relief from a final judgment,

order, or proceeding on the grounds of mistake, inadvertence, excusable neglect, newly discovered evidence, or fraud." *Dickerson v. Bd. of Educ. of Ford Heights.*, 32 F.3d 1114, 1116 (7th Cir. 1994) (internal citations and quotation marks omitted). "The rule was designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law." *Brown v. Pierson*, 12 F. App'x 398, 401 (7th Cir. 2001). "The ground for setting aside a judgment under Rule 60(b) must be something that could not have been used to obtain a reversal by means of a direct appeal." *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000).

Rule 59(e), on the other hand, may be used to correct "a manifest error of law or fact," and it "essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell*, 51 F.3d at 749. A manifest error of law "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

"The overlap between the two rules is * * * imperfect" and a "court should correct a manifest error of law under Rule 59(e)." *Russell*, 51 F.3d at 749. That said, the Seventh Circuit has recognized that "subsection (1) of Rule 60(b)," which deals with mistake and inadvertence, "allows a district court to correct its own errors that could be corrected on appeal, at least if the motion is not a device to avoid expired appellate time limits." *Mendez v. Republic Bank*, 725 F.3d 651, 659 (7th Cir. 2013).

### III.   Analysis

Here, Plaintiffs move for reconsideration explicitly under Rule 60(b). [102, at 1] ("Pursuant to Federal Rule of Civil Procedure 60(b), Plaintiffs move this Court to reconsider its June 12, 2020 Memorandum Opinion and Order."). However, they argue that the Court committed

3

*legal* error by issuing an order that conflicts with Seventh Circuit precedent and impermissibly reinterprets the ADA's statutory and regulatory framework.  As explained above, a Rule 60(b) motion is typically not the appropriate vehicle to argue for legal error.  See, *e.g.*, *Brown*, 12 F. App'x at 401.  Further, Plaintiffs do not argue that the Court's order was based on "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), and therefore do not ask the Court to apply the exception permitting it to correct "errors that could be corrected on appeal," *Mendez*, 725 F.3d at 659.

The mismatch between Plaintiffs' argument and choice of rule could be viewed as a sufficient basis for denying the motion.  See *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 667 (7th Cir. 2014) ("The district court does not abuse its discretion by denying a Rule 60(b) motion that is not based on one of the specified grounds for relief.").  But the Court is not inclined to rule on that basis and in fact appreciates the opportunity to correct any errors in its decisions prior to the filing of an appeal.  Moreover, given that Plaintiffs filed their motion within 28 days after the entry of the order and judgment, logic would suggest that Plaintiffs may well have intended to move for relief under Rule 59(e).  However, as explained below, Plaintiffs have not demonstrated that the order is based on a manifest error of law.

In seeking reconsideration, Plaintiffs set forth three arguments: (1) the order conflicts with two Seventh Circuit cases, (2) the order fails to recognize that the duty to provide reasonable accommodations is separate from the duty to provide program access, and (3) the order completely restructures the rights provided by the ADA.  The Court will address each argument in turn.

    A.    **Conflict with Seventh Circuit Precedent.**

Plaintiffs first argue that the order runs afoul of *Lacy v. Cook County*, 897 F.3d 847 (7th Cir. 2018).  There, wheelchair-using detainees brought a suit against the county and sheriff,

4

arguing that the county courthouses' inaccessible ramps and bathroom facilities violated the ADA and RHA and that the county was required to make reasonable modifications. *Id.* at 851. The detainees requested a preliminary injunction, a permanent injunction, and damages. *Id.* at 851–82, 855. The district court held an evidentiary hearing, though it was unclear whether the hearing was for the preliminary injunction motion alone or if it was also for the permanent injunction motion. *Id.* at 855–56. The court used findings from this hearing to rule on the permanent injunction motion and to grant the detainees' motion for summary judgment on liability. *Id.* at 856–57. The case then proceeded to a trial on damages. *Id.* Much of the Seventh Circuit's opinion dealt with this procedural history, explaining that the defendants never waived their right to a jury trial on the damages claim and that the district court committed reversible error by using its own factual findings to rule on the issue of liability regarding that claim. *Id.* at 858–62. The Seventh Circuit "remand[ed] for a jury trial on the question of ADA liability." *Id.* at 861. The court then went on to "address those matters raised on appeal that [were] not tainted directly by the deprivation of a jury trial," including whether the county complied with regulations that applied to facilities that were altered after 1992. *Id.* at 862, 867–869.

Plaintiffs here argue that under the logic of this Court's order, "*Lacy* could not have been remanded for trial on the reasonable modification claims without first ruling on whether" certain efforts the county made to accommodate the detainees "provided program access." [102, at 4]. As the Court understands it, Plaintiffs argue that if program access impacted the detainees' reasonable modification claim, then the Seventh Circuit would have determined whether the defendants denied detainees program access before remanding. Because the Seventh Circuit did not do so, the logic goes, program access cannot impact, much less terminate, a claim for reasonable modifications.

5

In the Court's view, this argument reads too much into *Lacy*'s decision to remand. The Seventh Circuit remanded because the district court erred in relying on its own factual findings, instead of allowing a jury to make those findings. It does not follow that before the Seventh Circuit could have reached this conclusion, it had to make its own factual determinations on the merits of the claim. Further, it is clear that the *Lacy* court's analysis centered on the defendants' procedural rights and not substantive ADA law. Plaintiffs' contention that *Lacy* constitutes binding precedent on the relationship between program access and reasonable modifications under the ADA overreads the case.

Plaintiffs also suggest that the Court erred in considering *Lacy* on the issue of the ADA regulation pertaining to facilities renovated after 1992 because much of the opinion discusses claims related to pre-existing facilities. Although Plaintiffs are correct at a superficial level, this argument also misapprehends *Lacy*. The section pertaining to the renovated facilities is the only section of the *Lacy* court's discussion that relates to the merits of the detainees' ADA claims in a way that is even potentially relevant to the case here. The remaining sections of the court's discussion relate to how the district court erred by violating the defendants' right to a jury trial, 897 F.3d at 585–861, the consequences of that violation, *id.* at 861–62, whether a claim for damages under the ADA required a showing of deliberate indifference or discriminatory animus, *id*. at 862–63, and whether the district court erred in certifying a class, *id.* at 863–67. The ADA regulation that the *Lacy* court substantively analyzed pertained to structures renovated after 1992. *Id.* at 867–69. As explained in the Court's prior order, this regulation is not relevant here.

Next, Plaintiffs argue that the order conflicts with another Seventh Circuit decision—*Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599 (7th Cir. 2004)—that addresses 28 C.F.R. § 35.130(d)'s requirement for integrated settings. Section 35.130(d) provides that "[a]

public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." Relevant here, *Radaszewski* found that a plaintiff stated a claim by alleging that the state's refusal to provide her disabled son care at home as opposed to at a nursing facility violated his right to receive services in an integrated setting. *Radaszewski*, 383 F.3d at 614–15. As Plaintiffs note, the court did not question whether the plaintiff's disabled son had program access and therefore the court implied that the defendant could violate his right to integrated services regardless of whether he had program access. Plaintiffs argue that in contrast to *Radaszewski*, the Court here impermissibly linked program access to the right to integrated services such that once it determined that G.P. had program access, her right to integrated services was no longer relevant.

This argument misapprehends this Court's order. The Court did not conclude that program access negates any right to integrated services. Instead, it recognized that perfect integration is not the standard and reasoned that the fact that Defendant offers its Montessori program in accessible buildings meant that the program was integrated. [100, at 21–22, 29].[1] In doing so, the Court noted the interplay between § 35.130—which requires public entities to "administer services, programs, and activities in the most integrated setting appropriate"—and § 35.150—which permits public entities to achieve program accessibility by "reassign[ing] services to accessible buildings" and "deliver[ing] services at alternate accessible sites." [100, at 21–22]. Indeed, the *Americans with Disabilities Act: Title II Technical Assistance Manual* ("*TA Manual*") comments on the

---

[1] Much of this discussion occurs in the portion of the order focused on program access under § 35.150. However, the Court expressly incorporated this discussion when analyzing § 35.130's integration requirement. [100, at 29].

7

integrated setting requirement's "[r]elationship to 'program accessibility' requirement."[2] *TA Manual*, 3.4200. As an example, the *TA Manual* provides:

> ILLUSTRATION: A school system should provide for wheelchair access at schools dispersed throughout its service area so that children who use wheelchairs can attend school at locations comparable in convenience to those available to other children. Also, where "magnet" schools, or schools offering different curricula or instruction techniques are available, the range of choice provided to students with disabilities must be comparable to that offered to other students.

*Id.* Here, Defendant offers schools using the Montessori instruction technique and has offered that instructional technique at buildings accessible to students with disabilities. Therefore, consistent with the *TA Manual* illustration, "the range of choice provided to students with disabilities" is "comparable to that offered to other students." *Id.* In short, the order did not impermissibly treat its program access analysis as dispositive with respect to its integrated setting analysis. Instead, the Court concluded that perfect integration is not the standard and that Defendant provided access to the Montessori program in an appropriately integrated setting.

### B. Relationship Between Program Access and Reasonable Accommodations

In addition to arguing that the Court's prior opinion conflicts with Seventh Circuit precedent, Plaintiffs contend that the order incorrectly concluded "that the right to a reasonable modification is swept away once program access is achieved." [102, at 8]. Plaintiffs argue that such conclusion disregards the fact that "the duty to accommodate is an independent basis of liability under the ADA." [*Id.*, at 2] (quoting *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006)). Here, Plaintiffs have a valid point. The order does state that

---

[2] As the Court explained in its order, courts "regularly consult[]" the *TA Manual* "to flesh out the regulatory framework of the ADA." [100, at 16 n.11]; see also *Fortyune v. City of Lomita*, 766 F.3d 1098, 1104 (9th Cir. 2014) (explaining that courts should utilize the TA Manual when analyzing the ADA); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 696 (7th Cir. 1998) (citing the Title I *TA Manual* for definition of light-duty jobs). The Court notes that in their motion for reconsideration, Plaintiffs do not take issue with the Court's use of the *TA Manual*.

8

"the request for modifications must stem from a service denial or act of discrimination" and that "because Defendant made its Montessori program accessible, no modification was necessary." [100, at 26]. And to Plaintiffs' point, the Seventh Circuit explained that "a plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim under Title II of the ADA." *Wisconsin Cmty. Servs., Inc.*, 465 F.3d at 753 (footnote omitted). Further, § 35.130(b)(7) "contemplates that prophylactic steps must be taken to avoid discrimination." *Id.* Thus, to the extent that the Court's prior order states or implies either that reasonable modifications require a specific showing of disparate treatment or disparate impact[3] or that such modifications can never be required as a prophylactic measure, the order is incorrect. The Court appreciates the opportunity to recognize and correct its error.

Yet, the logic of the order is not as broad as the Court's erroneous and now-corrected statements would suggest, and under the proper understanding of *Wisconsin Community Services* and § 35.130(b)(7) articulated in this opinion, the result in this case remains the same. Section 35.130(b)(7) requires public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." Thus, as emphasized in the Court's prior opinion, public entities must make certain modifications when they are "necessary to avoid discrimination on the basis of disability." *Id.*; see also [100, at 26]. The corollary is that the regulation does not require public entities to make modifications that are not necessary to avoid discrimination on the basis of disability. As the Court further explained, here (1) G.P. was afforded program access and

---

[3] The court in *Wisconsin Community Services* explained that it used "'disparate impact' to signify the method of proof under anti-discrimination laws that compares the treatment among otherwise similarly situated individuals," as opposed to any broader definition. 465 F.3d at 753 n.14. This Court uses the same term in the same way.

9

(2) that program access meant that there was no discrimination and therefore no need for further modifications. Contrary to Plaintiffs' argument, this conclusion does not mean that the Court concluded that "the right to a reasonable modification is swept away once program access is achieved." [100, at 8]. Instead, it means that given the facts of this case, once Defendant provided program access, there was no remaining discrimination for which a reasonable modification was "necessary to avoid."[4] § 35.130(b)(7). And notably, Plaintiffs do not challenge the Court's determination that Defendant provided G.P. program access or explicitly address the Court's conclusion that reasonable modifications are required only when "necessary to avoid discrimination." *Id.*

    C.    **Other Rights Under the ADA**

In their third argument, Plaintiffs assert that the order "will completely restructure the rights provided by the ADA," and they list examples of rights that, under the purported logic of the order, can be ignored once an entity achieves program access, such as the right to a service animal. [100, at 8] (capitalization modified). In doing so, Plaintiffs characterize the order as concluding that "once an entity achieves program access, all other rights in the Title II regulations become superfluous." [*Id.*]. That is not an accurate reading of the Court's order. As explained above, the Court's conclusion regarding reasonable modification is tethered to both the specific text of § 35.130(b)(7) and the facts of this case. First, the regulation provides for reasonable modifications when "necessary to avoid discrimination on the basis of disability." § 35.130(b)(7). Other portions of the regulations Plaintiffs cite as examples do not have this limiting factor baked

---

[4] Plaintiffs also contend that the order conflates "service, program, or activity" as used in § 35.150 with "aid, benefit, or service" as used in § 35.130(b). [102, at 6]. However, Plaintiffs fail to explain how any difference among these terms translates to continued discrimination against G.P. after Defendant's transfer offer provided her program access.

10

in. For example, § 35.136 requires public entities to "permit the use of a service animal by an individual with a disability." Nothing in this regulation indicates that program access could negate this requirement, and nothing in the Court's order suggests otherwise. Second, the Court's order does not indicate that when a person with disabilities has program access that person can *never* require a reasonable modification. Instead, it remains conceivable that a person could have program access but nevertheless face some other form of discrimination requiring a reasonable modification. But not on the facts and circumstances of this case.

### IV.     Conclusion

For the reasons stated above, Plaintiffs' motion to reconsider [102] is granted in part (in that the Court acknowledges and corrects an error in its prior opinion), but otherwise denied as that error does not alter the proper disposition of this case. Accordingly, no relief will be granted under either Rule 59(e) or Rule 60(b) and the final judgment [101] entered on June 12, 2020 stands.

Dated:  February 22, 2021

                                                      _____
                                                      Robert M. Dow, Jr.
                                                      United States District Judge